IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| O'REILLY AUTO ENTERPRISES, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| UNITED STATES FIRE INSURANCE COMPANY and WESTCHESTER SURPLUS LINE INSURANCE COMPANY, | ) No. 6:17-CV-03007-MDH ) ) JURY TRIAL DEMANDED ) ) |
| Defendants. | ) ) |

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S ANSWER, AFFIRMATIVE AND OTHER DEFENSES TO PLAINTIFF'S PETITION**

NOW COMES Westchester Surplus Lines Insurance Company (formerly known as Industrial Insurance Company of Hawaii, Ltd.) ("Westchester Surplus"), as its Answer, Affirmative and Other Defenses to the Petition of Plaintiff O'Reilly Auto Enterprises, LLC ("O'Reilly"), states as follows:

**COUNT I**
**(Breach of Contract/Vexatious Refusal)**

1. At all times mentioned herein, O'Reilly was, and still is, a limited liability company organized and existing under the laws of the State of Delaware, which is registered to do business in the State of Missouri.

Response: Westchester Surplus is without information to admit or deny this allegation, and therefore denies same. Answering further, Westchester Surplus states that, on information and belief, O'Reilly's citizenship for purposes of diversity jurisdiction is Missouri.

2. At all times mentioned herein, Defendant US Fire was, and still is, a foreign insurance company, which is registered with the Missouri Division of Insurance and subject to the rules and regulations of the Missouri Division of Insurance. As such, it may be served with process

through the office of the Director of Insurance for the State of Missouri pursuant to §375.906 RSMo.

Response: Westchester Surplus is without information to admit or deny this allegation, and therefore denies same.

3. Industrial Indemnity Insurance Company (herein "Industrial Indemnity"), issued a policy of liability insurance to Grand Auto, Inc. (herein "Grand Auto") covering the policy period from May 22, 1987 through May 22, 1990. Said policy was identified as Policy No. SG85722271 (the "Industrial Indemnity Policy"). Attached hereto, marked as Exhibit "A" hereof and incorporated herein by reference are provisions of said policy purportedly issued by Industrial Indemnity.

Response: Westchester Surplus states that, on information and belief, Industrial Indemnity issued policy SG85722271, issued at policy inception for the three year period May 22, 1987 through May 22, 1990.

4. Under the original terms of the Industrial Indemnity Policy, Industrial Indemnity agreed to provide Grand Auto coverage for liability claims, including claims for injuries alleged to be caused by asbestos contained in products sold by Grand Auto and where the claimant alleges exposure to asbestos during the policy period from May 22, 1987 through May 22, 1990.

Response: On information and belief, Westchester Surplus admits only that the terms and conditions of the referenced policy speak for themselves.

5. Under the Industrial Indemnity Policy, Grand Auto was afforded liability coverage with limits of liability of $2,000,000.00 for each year, and each partial year, of the policy period.

Response: On information and belief, Westchester Surplus admits paragraph 4 based upon the policy's express language, including but not limited to the following provision:

-2-

> The limits of this Insurance apply *separately* to each consecutive annual period *and to any remaining period of less than 12 months*, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.

(Emphasis added.)

6. Prior to August 14, 2013, US Fire became the successor-in-interest to Industrial Indemnity. It thereby assumed the duties and responsibilities of Industrial Indemnity under the Industrial Indemnity Policy and became obligated to provide the coverages afforded thereunder and to defend and indemnify Grand Auto and its successor-in-interest on the terms and conditions set forth therein.

<u>Response</u>: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

7. O'Reilly is the successor-in-interest to Grand Auto, and therefore is entitled to all rights and benefits of Grand Auto under the Industrial Indemnity Policy, including the right to be defended and indemnified for claims covered thereby up to the applicable policy limits.

<u>Response</u>: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

8. US Fire named RiverStone Claims Management, LLC ("US Fire's Agent") as its authorized claims handling agent for the Industrial Indemnity Policy.

<u>Response</u>: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

9. On or about August 14, 2013, US Fire, through US Fire's Agent, notified Plaintiff that all policy limits under the Indemnity Industrial Policy had been exhausted and that US Fire would no longer pay defense costs or indemnify O'Reilly for claims covered by the Industrial Indemnity Policy, including asbestos claims in which it was alleged that the plaintiff had been exposed during the policy period of the Industrial Indemnity Policy to asbestos contained in automobile products sold by Grand Auto (the "Covered Asbestos Claims").

Response: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

10. O'Reilly made demand upon US Fire to pay defense costs incurred and indemnify payments made with respect to Covered Asbestos Claims after August 14, 2013 as required by the Industrial Indemnity Policy.

Response: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

11. As of August 15, 2016, O'Reilly had incurred defense costs and made indemnity payments on Covered Asbestos Claims of approximately $1,499,334.26, all of which was covered and required to be paid by US Fire under the Industrial Indemnity Policy.

Response: On information and belief, Westchester Surplus admits that until US Fire fully exhausts the limits of coverage of the Industrial Indemnity Policy, which on information and belief Westchester Surplus does not believe US Fire has done, US Fire must pay covered defense and indemnity costs incurred by O'Reilly on Covered Asbestos Claims. Westchester Surplus is without information to admit or deny any other allegations set forth in this paragraph, and therefore denies same.

12. In addition, US Fire continues to refuse to defend O'Reilly on pending Covered Asbestos Claims or to pay settlements or judgments which may be entered into with respect to Covered Asbestos Claims and, therefore, O'Reilly will incur additional expenses and costs covered by the Industrial Indemnity Policy from and after August 15, 2016 for which US Fire is liable, the exact amount of which cannot now be determined.

<u>Response</u>: On information and belief, Westchester Surplus admits that until US Fire fully exhausts the limits of coverage of the Industrial Indemnity Policy, which on information and belief Westchester Surplus does not believe US Fire has done, US Fire must pay covered defense and indemnity costs incurred by O'Reilly on Covered Asbestos Claims. Westchester Surplus is without information to admit or deny any other allegations set forth in this paragraph, and therefore denies same.

13. Although demand has been made by O'Reilly on US Fire to pay said defense costs and the indemnity obligations under the Industrial Indemnity Policy on Covered Asbestos Claims from and after August 14, 2013, US Fire has failed and refused to pay the same or any part thereof.

<u>Response</u>: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

14. US Fire has failed to pay expenses and costs incurred by O'Reilly on Covered Asbestos Claims without reasonable cause or excuse.

<u>Response</u>: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

15. As a result of the refusal of US Fire to pay defense costs, and to satisfy its indemnity obligations relating to Covered Asbestos Claims, O'Reilly is entitled to damages under §375.420 RSMo. for the vexatious refusal of US Fire to pay as required by the Industrial Indemnity Policy,

-5-

Case 6:17-cv-03007-RK   Document 5   Filed 01/17/17   Page 5 of 20

in an amount not to exceed twenty percent (20%) of the first $1,500.00 of the amount due, and ten percent (10%) of the amount due in excess of $1,500.00, together with the reasonable attorney's fee incurred by O'Reilly.

Response: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

The unnumbered prayer for relief following Paragraph 15 of Count I of Plaintiff's Petition is not directed at Westchester Surplus and, as such, no response is required of Westchester. To the extent a response is deemed to be required, Westchester Surplus denies that Plaintiff is entitled to the relief sought.

## COUNT II
### (Declaratory Judgment)

1. O'Reilly restates and realleges the allegations contained in Paragraphs 1 through 15 of Count I of its Petition, and incorporates said allegations herein by reference.

Response: Westchester Surplus restates and realleges the responses contained in Paragraphs 1 through 15 above, and incorporates said responses herein by reference as if set forth in full.

2. Westchester Surplus is a foreign insurance company, which is registered with the Missouri Department of Insurance to do business in the State of Missouri, and is subject to the rules and regulations of the Missouri Division of Insurance. As such, it may be served with process through the office of the Director of Insurance for the State of Missouri pursuant to §375.906 RSMo.

Response: Westchester Surplus admits only that it is a foreign insurance company registered to do business in the State of Missouri. The remaining allegations are conclusions of

law to which no response is required. To the extent a response is deemed to be required, Westchester Surplus denies same.

3. Industrial Insurance Company of Hawaii, Ltd. ("Industrial Insurance") issued a policy of excess insurance coverage to Grand Auto with a policy period from May 22, 1986 through May 22, 1987, and that policy was identified by Industrial Insurance as Policy Number JE 895-1968 (the "Excess Policy"). Provisions of the Excess Policy purportedly issued by Industrial Insurance are attached hereto, marked as Exhibit "B" hereof and are incorporated herein by reference.

Response: Westchester Surplus admits only that Industrial Insurance Company of Hawaii, Ltd. issued an insurance policy to Grand Auto, Inc. bearing Policy No. JE 895-1968, the terms and conditions of which speak for themselves. Westchester Surplus denies that Exhibit "B" to Plaintiff's Petition is a complete and accurate copy of Policy No. JE 895-1968.

4. The Excess Policy provided liability coverage over the policy limits in effect during the period from May 22, 1986 through May 22, 1987 under the policy Industrial Indemnity issued to Grand Auto for the period from May 22, 1984 through May 22, 1987, which was identified as Industrial Indemnity Policy No. SG 851-5539 (the "Underlying Policy"). Provisions of the Underlying Policy which were purportedly issued by Industrial Indemnity are attached hereto, marked as Exhibit "C" hereof and are incorporated herein by reference.

Response: Westchester Surplus states that the terms and conditions of Policy No. JE 895-1968 speak for themselves. As to the remaining allegations in this paragraph, Westchester Surplus is without information to admit or deny such allegations and therefore denies same.

5. The applicable policy limits under the Underlying Policy was $500,000.00 per occurrence and in the aggregate for the first year of the policy period of the Underlying Policy, and

-7-

$1,000,000.00 per occurrence and in the aggregate for the final two (2) years of the policy period of the Underlying Policy.

Response: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

6. Under the terms and conditions of the Underlying Policy, the aggregate limit of coverage applied separately to each consecutive annual period. Therefore, the total aggregate coverage provided under the Underlying Policy is the sum of $2,500,000.00 (the "Underlying Policy Aggregate Limits").

Response: Paragraph 6 contains legal conclusions to which no response is required, rather than allegations of fact. Should a response be deemed necessary, Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

7. The policy limit for the Excess Policy is the sum of $2,000,000.00.

Response: Denied as stated. Answering further, Westchester Surplus states that the terms and conditions of Policy No. JE 895-1968 speak for themselves.

8. Under the Excess Policy, Industrial Insurance agreed to pay approved expenses and to indemnify Grand Auto for judgments and settlements on asbestos claims that are covered by the Underlying Policy, but which exceeds the limits of coverage under the Underlying Policy for the period from May 22, 1986 through May 22, 1987.

Response: Denied as stated. Answering further, Westchester Surplus states that the terms and conditions of Policy No. JE 895-1968 speak for themselves.

16. [*sic*] The claims for which the Underlying Policy provided coverage included claims in which it was alleged that the plaintiff had been exposed during the policy period of

-8-

the Underlying Policy to asbestos contained in automobile parts sold by Grand Auto (the "Underlying Covered Asbestos Claims").

<u>Response</u>: Denied as stated. Answering further, Westchester Surplus states that the terms and conditions of Policy No. JE 895-1968 speak for themselves.

9. The claims for which the Excess Policy would provide coverage included all claims covered by the Underlying Policy, including claims in which it was alleged that the plaintiff had been exposed during the policy period of the Excess Policy to asbestos contained in automobile parts sold by Grand Auto (the "Covered Excess Claims").

<u>Response</u>: Denied as stated. Answering further, Westchester Surplus states that the terms and conditions of Policy No. JE 895-1968 speak for themselves.

10. On November 1, 2012 US Fire, through US Fire's Agent, notified O'Reilly that the policy limits of the Underlying Policy were exhausted through the payment of covered claims.

<u>Response</u>: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

11. US Fire claims that the aggregate policy limit for Underlying Covered Asbestos Claims for the period from May 22, 1984 through May 22, 1987 is $1,500,000.00 instead of $2,500,000.00 as claimed by O'Reilly.

<u>Response</u>: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

12. Westchester Surplus is the successor-in-interest to Industrial Insurance, and therefore has assumed all obligations of Industrial Insurance, including its obligations under the Excess Policy.

Response: Denied as stated. Answering further, Westchester Surplus admits only that it has assumed the obligations of Industrial Insurance Co. of Hawaii, Ltd. with respect to Policy No. JE 895-1968.

13. US Fire has claimed that its coverage under policies issued to Grand Auto by Industrial Indemnity, including coverage under the Industrial Insurance Policy and the Underlying Policy, have been fully paid and exhausted.

Response: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

14. O'Reilly claims that the policy limits under the Underlying Policy and the Industrial Indemnity Policy have not been exhausted and that aggregate coverage of $1,000,000.00 remains available to pay Underlying Covered Asbestos Claims under the terms of the Underlying Policy, and an additional $2,000,000.00 is available to pay Covered Asbestos Claims under the terms of the Industrial Indemnity Policy.

Response: This paragraph contains a characterization of Plaintiff's theory in this lawsuit, to which no answer is required. To the extent an answer is deemed to be required, Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

15. After US Fire claimed that its coverage under the Industrial Indemnity Policy to pay Covered Asbestos Claims, and its coverage under the Underlying Policy to pay Underlying Covered Asbestos Claims were exhausted, O'Reilly made demand upon Westchester, through its claims agent, Brandywine Holdings (herein "Westchester's Agent"), to pay Underlying Covered Asbestos Claims where the claimed exposure to asbestos fell within the policy period of the Excess Policy.

-10-

Response: Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same. Answering further, Westchester Surplus admits only that Plaintiff at one time made a demand upon Westchester Surplus with respect to underlying asbestos claims at issue in this litigation.

16. Both US Fire and Westchester Surplus have failed and refused to provide coverage as required under their respective policies held by O'Reilly and have failed and refused to reimburse O'Reilly for defense costs incurred and indemnity payments made by O'Reilly with respect to asbestos claims covered under the Industrial Indemnity Policy, the Underlying Policy or the Excess Policy.

Response: Denied. As to the allegations in this paragraph directed at US Fire, Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same. As to the allegations in this paragraph directed at Westchester, Westchester Surplus denies that it has failed and refused to provide coverage as required under Policy No. JE 895-1968.

17. Westchester Surplus has also failed and refused to acknowledge that it is responsible to provide coverage under the Excess Policy and to pay approved expenses or to indemnify O'Reilly on Covered Excess Claims upon the exhaustion of the Underlying Policy and/or the Industrial Indemnity Policy.

Response: Denied.

18. O'Reilly claims that Westchester Surplus has responsibility to pay approved expenses and to indemnify O'Reilly for payments made to claimants on asbestos claims covered under the Excess Policy upon the exhaustion of the Underlying Policy.

Response: The statements in this paragraph are a non-factual characterization of Plaintiff's theory in this case, to which no response is required. To the extent a response is deemed to be required, Westchester Surplus denies the statements in this paragraph and, answering further, states that its obligations are as set forth pursuant to the terms and conditions of Policy No. JE 895-1968.

19. An actual controversy exists between O'Reilly, US Fire, and Westchester Surplus with respect to the coverages or limits of coverage afforded under the Underlying Policy, the Industrial Indemnity Policy, and with respect to the Excess Policy, and the rights and obligations of O'Reilly, US Fire and Westchester Surplus concerning the payment of defense costs and indemnity obligations for claims covered by said policies.

Response: Westchester Surplus admits only that there is an actual controversy between Plaintiff and Westchester Surplus as to Westchester's current obligations, if any, pursuant to Policy No. JE 895-1968. As to any other allegations in this paragraph, Westchester Surplus is without information to admit or deny the allegations set forth in this paragraph, and therefore denies same.

Westchester Surplus denies that Plaintiff is entitled to the relief it seeks against Westchester Surplus in the Prayer for Relief following Paragraph 19 of Count II of Plaintiff's Petition, and Westchester Surplus asks for judgment in its favor.

## **AFFIRMATIVE AND OTHER DEFENSES**

Westchester Surplus does not admit or intend to indicate in any way that it has the burden of proof with regard to the defenses stated below. The omission of any potential defense herein should not be construed as a waiver of the defense. These defenses are not intended to admit any allegation of the Petition. Westchester Surplus reserves the right to include additional defenses or

to supplement existing defenses pending disclosure and analysis of additional information by any party or non-party during discovery in this action. Additional or more specific defenses cannot be articulated at this time due to Plaintiff's failure to include particularized information pertaining to its claim and because discovery has not even begun. The relief requested by Plaintiff against Westchester Surplus should be denied for the following reasons:

## FIRST DEFENSE

Plaintiff's Complaint fails to state a cause of action upon which relief may be granted.

## SECOND DEFENSE

Plaintiff's claims against Westchester Surplus are or may be barred in whole or in part to the extent that they do not arise from or constitute a justiciable controversy as required for declaratory relief.

## THIRD DEFENSE

Plaintiff's claims against Westchester Surplus are or may be barred in whole or in part to the extent that Plaintiff failed to name all necessary parties to this litigation, including but not limited to, other insurers who may have issued insurance policies to Plaintiff.

## FOURTH DEFENSE

Plaintiff's claims against Westchester Surplus are or may be barred to the extent that Plaintiff failed to perform all of the obligations, covenants and conditions precedent and conditions subsequent applicable under Westchester Surplus policy number JE 895-1968.

## FIFTH DEFENSE

Plaintiff's claims against Westchester Surplus are or may be barred to the extent the underlying asbestos lawsuits did not arise out of an "accident" or "occurrence."

## SIXTH DEFENSE

-13-

Plaintiff's claims against Westchester Surplus are or may be barred to the extent the underlying asbestos lawsuits do not involve "bodily injury" that occurred during the policy period of the Westchester Surplus Policy.

**SEVENTH DEFENSE**

Plaintiff's claims against Westchester Surplus are or may be barred to the extent the underlying asbestos lawsuits seek to impose liability on an entity which is not specifically insured under such policies.

**EIGHTH DEFENSE**

There is no coverage under the Westchester Surplus Policy to the extent that the insured failed to furnish Westchester Surplus with prompt written notice of any alleged accident, occurrence, claim and/or suit as required under the policy.

**NINTH DEFENSE**

Plaintiff's claims against Westchester Surplus are or may be barred to the extent the underlying asbestos lawsuits do not seek "damages" for "bodily injury," "property damage" or "personal injury" within the meaning of the policy.

**TENTH DEFENSE**

Plaintiff's claims against Westchester Surplus are or may be barred in whole or in part to the extent that Plaintiff failed to obtain prior consent or approval from Westchester Surplus before entering into any agreements or assuming any obligations to pay or incur expense with respect to claims for which Plaintiff seeks defense or indemnity.

**ELEVENTH DEFENSE**

Plaintiff's claims against Westchester Surplus are or may be barred in whole or in part to the extent that the expenditures for which Plaintiff seeks reimbursement or indemnification

-14-

include, but are not limited to, voluntary payments or promises to pay any sums in settlement of any claims against Plaintiff.

## TWELFTH DEFENSE

Plaintiff's claims may be barred in whole or in part by the doctrines of laches, waiver, estoppel, the applicable statute of limitations and any contractual limitations period set forth in the Westchester Surplus Policy.

## THIRTEENTH DEFENSE

The Westchester Surplus Policy does not provide coverage for fines, penalties, punitive and/or exemplary and/or treble damages for the actions and conduct of the insured. There also is no coverage under the Westchester Surplus Policy for the insured's acts and conduct in violation of state and/or federal laws.

## FOURTEENTH DEFENSE

Plaintiff's claims against Westchester Surplus are or may be barred in whole or in part by Plaintiff's failure to take reasonable measures to mitigate, minimize or avoid its alleged damages.

## FIFTEENTH DEFENSE

There is no coverage under the Westchester Surplus Policy to the extent that such claims seek injunctive or equitable relief (including the costs of complying with equitable relief or government regulations or directives) or for settlements or judgments with respect thereto.

## SIXTEENTH DEFENSE

Plaintiff's claims against Westchester Surplus are or may be barred to the extent the claims are subject to the other insurance clause in the Westchester Surplus Policy.

## SEVENTEENTH DEFENSE

There is no coverage under the Westchester Surplus Policy for any underlying claims arising with respect to premises alienated by the insured.

### EIGHTEENTH DEFENSE

The Westchester Surplus Policy does not and cannot provide coverage for a known loss, loss in progress or for damage or injury that the insured already knew was damaged at the inception of the Westchester Surplus Policy.

### NINETEENTH DEFENSE

Plaintiff's claims against Westchester Surplus are or may be barred in whole or in part to the extent that Plaintiff breached a condition of the Westchester Surplus Policy requiring that Plaintiff assist and cooperate with Westchester.

### TWENTIETH DEFENSE

Plaintiff's claims against Westchester Surplus are or may be barred in whole or in part to the extent that the conduct giving rise to Plaintiff's alleged claims or liability was expected or intended or deliberate and/or intentional in nature.

### TWENTY-FIRST DEFENSE

There is no coverage under the Westchester Surplus Policy to the extent that any material misrepresentation or omission was made by the insured in obtaining such policy.

### TWENTY-SECOND DEFENSE

Westchester Surplus is not obligated to defend Plaintiff or to reimburse Plaintiff for any alleged defense costs to the extent that no "suit" has been filed against Plaintiff as required by the Westchester Surplus Policy.

### TWENTY-THIRD DEFENSE

Plaintiff's claims against Westchester Surplus are or may be barred in whole or in part to the extent that the limits of any underlying insurance, self-insured retentions, and/or deductible amounts have not yet been exhausted or paid as required by the terms of the Westchester Surplus Policy.

**TWENTY-FOURTH DEFENSE**

Plaintiff's claims against Westchester Surplus are or may be barred, in whole or in part, by the provisions, terms, conditions, exclusions, and limitations which are contained in or incorporated by the Westchester Surplus Policy. Westchester Surplus refers Plaintiff to the terms, definitions, conditions, and exclusions set forth in the Westchester Surplus Policy, which are contracts in writing which speak for themselves.

**TWENTY-FIFTH DEFENSE**

Westchester Surplus may have no obligation under the Westchester Surplus Policy to the extent that Plaintiff has impaired Westchester's rights of subrogation, indemnity or contribution.

**TWENTY-SIXTH DEFENSE**

There is no coverage under the Westchester Surplus Policy for any underlying lawsuits which result in bodily injury to any employee of the insured arising out of and in the course of their employment by the insured.

**TWENTY-SEVENTH DEFENSE**

Plaintiff's claims against Westchester Surplus are or may be barred to the extent the underlying asbestos lawsuits are barred by the Occupational Disease Exclusion contained in the Westchester Surplus policy.

-17-

## TWENTY-EIGHTH DEFENSE

Westchester Surplus reserves the right to raise additional defenses and to supplement those asserted herein upon discovery of further information regarding Plaintiff's claims and upon further investigation as to the provisions, terms and conditions of the Westchester Surplus Policy.

These additional defenses cannot specifically be articulated at this time due to Plaintiff's failure to particularize its claims.

Respectfully submitted,

WESTCHESTER SURPLUS LINES INSURANCE COMPANY

    */s/ Jacob D. Curtis*
By: _____
    One of its Attorneys

Alan K. Goldstein    (#36214MO)
Jacob D. Curtis    (#63771MO)
GOLDSTEIN AND PRICE, L.C.
One Memorial Drive, Suite 1000
St. Louis, MO 63102
(314) 516-1735 – Telephone
(314) 421-2832 – Facsimile
alan@gp-law.com
jacob@gp-law.com

Of Counsel:

Brian C. Coffey (*pro hac vice* motion to be submitted)
COHN BAUGHMAN & MARTIN
333 West Wacker Drive, Suite 900
Chicago, Illinois 60606
(312) 753-6606 – Telephone
(312) 753-6601 – Facsimile
brian.coffey@mclolaw.com

-19-

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January 2017, I served a copy of the foregoing on the following counsel *via* the Court's CM/ECF filing System:

Carlos Del Carpio
Theresa M. Carroll
100 North Riverside Plaza, Suite 2100
Chicago, Illinois 60606
cdelcarpio@cmk.com
tcarroll@cmk.com

I hereby certify that on this 17th day of January 2017, I served a copy of the foregoing on the following counsel *via* United States mail, postage prepaid, and electronic mail:

Charles B. Cowherd
Spencer Fane LLP
2144 East Republic Road, Suite B300
Springfield, Missouri 65804
ccowherd@spencerfane.com

*Attorneys for Plaintiff*

>                                    */s/ Jacob D. Curtis*
>                                    _____

-20-

Case 6:17-cv-03007-RK   Document 5   Filed 01/17/17   Page 20 of 20