IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| O'REILLY AUTO ENTERPRISES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:17-03007-CV-RK |
| | ) | |
| UNITED STATES FIRE INSURANCE | ) | |
| COMPANY, WESTCHESTER SURPLUS | ) | |
| LINE INSURANCE COMPANY, | ) | |
| CONTINENTAL CASUALTY | ) | |
| COMPANY, COLUMBIA CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court are cross motions for summary judgment on certain declaratory judgment issues in Count II filed by Defendant United States Fire Insurance Company ("U.S. Fire") and Plaintiff O'Reilly Auto Enterprises, LLC ("Plaintiff" or "O'Reilly"). (Docs. 186, 191.) The motions are fully briefed. (Docs. 187, 203, 215, 192, 200, 216.) For the reasons below, U.S. Fire's motion for summary judgment on certain declaratory judgment issues in Count II is **DENIED**, and Plaintiff's motion for summary judgment on certain declaratory judgment issues in Count II is **GRANTED**.

**I.     Background**

Plaintiff brings this insurance dispute lawsuit against four insurance carriers relating to coverage for asbestos personal injury lawsuits filed against Grand Auto (the "Asbestos Suits"). Plaintiff is the successor-in-interest to Grand Auto, Inc. ("Grand Auto"). Industrial Indemnity, San Francisco, CA ("Industrial Indemnity") issued two primary insurance polices to Grand Auto identified as Policy No. SG851-5539 ("Policy 5539") and Policy No. SG857-2271 ("Policy 2271") (collectively, the "U.S. Fire Policies"). U.S. Fire holds Industrial Indemnity's rights and obligations under the U.S. Fire Policies.[1] The remaining three defendants are excess/umbrella

---

[1] For purposes of this Order, references to Grand Auto and Plaintiff are considered interchangeable, as are references to U.S. Fire and Industrial Indemnity.

carriers: Westchester Surplus Lines Insurance Company ("Westchester"), Continental Casualty Company ("Continental"), and Columbia Casualty Company ("Columbia").

Plaintiff's First Amended Complaint asserts two counts: Breach of Contract/Vexatious Refusal against U.S. Fire (Count I) and Declaratory Judgment against all defendants (Count II). The instant motions for summary judgment concern three declaratory judgment issues in Count II: the application of Exclusion P in Policy 2271, the effect of Endorsement 29 to the policy limits of Policy 2271, and the scope of the deductible amounts under both U.S. Fire Polices. In its motion, U.S. Fire seeks the following declarations: (1) Exclusion P of Policy 2271 operates to exclude coverage for the Asbestos Suits where the only alleged exposure to a Grand Auto asbestos-containing product predates the inception of Policy 2271; (2) pursuant to Endorsement 29, Policy 2271 provides total liability coverage in the amount of $2 million; and (3) the phrase "claim adjusting expense" referenced in the $50,000 per occurrence deductible the U.S. Fire Policies includes outside attorneys' fees expended by U.S. Fire in the defense of the Asbestos Suits. Plaintiff opposes U.S. Fire's motion in full, and in its cross motion, seeks counter declarations on the second and third issues. Specifically, Plaintiff seeks a declaration (1) that pursuant to Endorsement 29, Policy 2271 provides total liability coverage in the amount of $4 million, and (2) that the phrase "claim adjusting expense" referenced in the $50,000 per occurrence deductible under the U.S. Fire Policies does not include outside attorneys' fees expended by U.S. Fire in the defense of the Asbestos Suits.

**II.     Legal Standard**

A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Where parties file cross-motions for summary judgment, "each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law." *Jaudes v. Progressive Preferred Ins. Co.*, 11 F. Supp. 3d 943, 947 (E.D. Mo. 2014). The rule requires summary judgment to be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. Discussion**

**A.     Choice of Law Analysis**

As a threshold issue, the Court considers which state law applies regarding the rules for construction of insurance contracts since state law controls the substantive issues. *See Interco, Inc. v. Nat'l Sur. Corp.*, 900 F.2d 1264, 1266 (8th Cir. 1990) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Missouri's choice-of-law rules determine which state's law should govern. *Am. Guar. & Liab. Ins. Co. v. United States Fid. & Guar. Co.*, 668 F.3d 991, 996 (8th Cir. 2012) (citing *Brown v. Home Ins. Co.*, 176 F.3d 1102, 1105 (8th Cir. 1999) (a federal court sitting in diversity applies the forum state's choice-of-law principles)). However, a court need not undertake the choice-of-law inquiry unless a conflict of law is demonstrated. *See Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (citation omitted). Because neither party demonstrates a conflict between Missouri and California law, there is no need to decide which law to apply, and the Court may use the law of both states interchangeably. *Am. Econ. Ins. Co. v. Jackson*, 476 F.3d 620, 623 (8th Cir. 2007).

**B.     Rules for Construction of Insurance Contracts**

"An insurance policy is a contract between the insured and insurer and its construction is governed by the rules which usually control other contracts." *Mauck v. Nw. Nat'l Ins. Co.*, 283 P. 338, 340 (Cal. Dist. Ct. App. 1929). "[W]hen language in an insurance policy is clear and explicit, that language controls construction and enforcement of the contract." *Travelers Cas. & Sur. Case Co. v. Am. Int'l Surplus Lines Ins. Co.*, 465 F. Supp. 2d 1005, 1013 (S.D. Cal. 2006) (discussing California law). Under California law,

> [b]efore finding policy language is ambiguous, coverage provisions must be construed in the context of the policy as a whole and the circumstances of the case, rather than in the abstract. The question whether a particular phrase is ambiguous in the context and circumstances must be answered through the eyes of a reasonable person in the position of the insured.

*Id.* at 1013 (citation omitted). "If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 884 P.2d 1048, 1053 (Cal. 1994). "The absence from the policy of a definition of [a term] does not *by itself* render the term ambiguous." *Bay Cities Paving & Grading v. Lawyers'*

3

*Mut. Ins. Co.*, 855 P.2d 1263, 1270 (Cal. 1993) (emphasis in original). In addition, "[d]isagreement over the interpretation of the terms of a contract does not create an ambiguity." *Bolinger v. Clarks Fork Mut. Ins. Co.*, 485 S.W.3d 803, 808 (Mo. Ct. App. 2016) (citation omitted).

    **C.**    **Application of Exclusion P to Policy 2271**

The following portions of Policy 2271 are relevant to the application of Exclusion P:

SECTION I—COVERAGES
COVERAGE A
BODILY INJURY . . . LIABILITY

1. Insuring Agreement

    a. We will pay on behalf of an insured all sums which an insured shall become legally obligated to pay as damages because of bodily injury . . . to which this insurance applies, caused by an 'occurrence' in the 'coverage territory,' during the policy period.

    . . .

2. Exclusions
   This insurance does not apply to:

    . . .

    p. Continuing or progressive 'bodily injury' . . . occurring at any time if such 'bodily injury' . . . arises out of an 'occurrence' which took place prior to the policy period.

. . .

SECTION V DEFINITIONS

. . .

9. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(187-3 at 4-6, 13-14.)

U.S. Fire seeks a ruling that Exclusion P to Policy 2271 bars coverage for claims where the claimant's only exposure to a Grand Auto asbestos-containing product predated the policy, since the "occurrence" took place before the inception of Policy 2271. However, U.S. Fire has not sought affirmative relief in this action by pleading a counterclaim for a declaration concerning Exclusion P. *See Beckham Cty. Rural Water Dist. No. 3 v. City of Elk City*, No. CIV-05-1485-F,

2007 U.S. Dist. LEXIS 43413, at *16 (W.D. Okla. June 14, 2007) (affirmative defenses do not provide a basis for affirmative relief); *Akiachak Native Cmty. V. United States DOI*, 827 F.3d 100, 107 (D.C. Cir. 2016) (same). Nor does U.S. Fire seek to redesignate its affirmative defenses concerning Exclusion P (U.S. Fire's 7th, 11th, and 18th affirmative defense) as counterclaims.[2] Accordingly, U.S. Fire is not entitled to an affirmative declaration from the Court on this issue.

To the extent U.S. Fire seeks summary judgment on its 7th, 11th, and 18th affirmative defenses such that Exclusion P bars coverage for any of the Asbestos Suits at issue in this case, it has failed to support its motion. As the moving party with respect to these affirmative defenses, U.S. Fire must satisfy the burden of production by "identify[ing] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which [they] believe[] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a) (a party may move for summary judgment on an affirmative defense) and (c) (procedures for supporting factual positions). Here, U.S. Fire points to five lawsuits and asserts the plaintiffs' alleged exposure to an asbestos-containing Grand Auto product occurred before the inception of Policy 2271. In support, U.S. Fire submits portions of the original complaints for each lawsuit, but the allegations in the complaints that concern the relevant exposure periods are too vague to allow the Court to definitively say that the exposure period predated Policy 2271.

For example, regarding the Hilliard lawsuit, Exhibit A to the plaintiff's complaint contains a history of plaintiff's exposure to asbestos. (Doc. 187-4 at 9, ¶ 3.) Exhibit A provides in relevant part:

> **In the late 1950s and early 1960s**, plaintiff changed the brake shoes on personal vehicles a total of at least four times, cleaning the brake drums with an air hose and installing BENDIX (HONEYWELL INTERNALATIONAL, INC.) brake shoes. Plaintiff removed and replaced clutches a total of at least three times on the same vehicles. Plaintiff rebuilt an engine at least once, removing and replacing gaskets. **Plaintiff purchased the replacement brake shoes, clutches and gaskets from**

---

[2] In its 7th affirmative defense, U.S. Fire asserts that Plaintiff's claims against it are barred to the extent bodily injury alleged in connection with underlying claims against Grand Auto occurred prior to the inception date of the U.S. Fire policies. In its 11th affirmative defense, U.S. Fire asserts that Plaintiff's claims against it are barred to the extent coverage for liability arising out of underlying claims against Grand Auto would be inconsistent with the fortuity, loss in progress, known loss, or known risk doctrines or otherwise uninsurable. In its 18th affirmative defense, U.S. Fire asserts that Plaintiff's claims are barred to the extent coverage for liabilities arising out of underlying claims against Grand Auto is barred by exclusions in the U.S. Fire Policies.

5

> **GRAND AUTO (CSK AUTO, INC.)** in East Oakland, California and **PEP BOYS (PEP BOYS-MANNY, MOE & JACK of CALIFORNIA)** in Alameda, California.

(*Id.* at 17, 39) (emphasis added). It is not clear from these allegations that the "late 1950s and early 1960s" is the exclusive timeframe when plaintiff was exposed to asbestos contained in the products purchased specifically from Grand Auto.[3]

Consequently, U.S. Fire has failed to demonstrate an absence of genuine issue of material fact that the exposure period predates the inception of Policy 2271 and has therefore has not met its burden to show it is entitled to summary judgment on its affirmative defenses concerning Exclusion P.

### D. The Policy Limits of Policy 2271 (Endorsement 29)

Policy 2271, at the time it was issued, provided coverage for the period of May 22, 1987, to May 22, 1990, with an annual limit of $2 million. Endorsement 29 to Policy 2271 provides that the amended effective date of cancellation is July 22, 1988, two months after the conclusion of the first annual period. Endorsement 29, in relevant part, provides:

> IT IS AGREED THAT THE EFFECTIVE DATE OF CANCELLATION IS AMENDED TO JULY 22, 1988.
>
> IT IS FURTHER AGREED THAT THE TERMS AND CONDITIONS FOR THE POLICY PERIOD MAY 22, 1987 TO MAY 22, 1988 ARE EXTENDED TO JULY 22, 1988.
>
> . . .

(Doc. 187-17.) Also relevant, Section III of Policy 2271 contains the following Limits of Liability condition:

---

[3] U.S. Fire relies on a Florida district court case, *Mt. Hawley Insurance Co. v. Dania Distribution Centre, Ltd., et al*, 763 F.Supp.2d 1359 (S.D. Fla. 2011), *aff'd* 513 Fed. App'x 890 (11th Cir. 2013). The district court in *Mt. Hawley* states that under Florida law, "[t]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the policy." 763 F.Supp.2d 1359 at 680. While the same principle may be true under California law, facts extrinsic to the complaint may also give rise to a duty to defend. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295, 24 Cal. Rptr. 2d 467, 471, 861 P.2d 1153, 1157 (1993) (citations omitted). Although the duty to defend does not turn on the ultimate adjudication of coverage, but on the facts known to the insurer at the inception of the lawsuit. *Id.* "Hence, the duty may exist even where coverage is in doubt and ultimately does not develop." *Id.* (internal quotations and citation omitted). The duty to defend ends either at the conclusion of the lawsuit or when "it has been shown that there is *no* potential for coverage[.]" *Id.* (emphasis in original). The vague allegations in the complaints, without more, do not show that there is no potential for coverage by the application of Exclusion P. Nor has U.S. Fire produced any facts extrinsic to the complaints to eliminate the possibility of coverage.

> The limits of the insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

(Doc. 187-3 at 9.)

The parties dispute the policy limits of Policy 2271 as per the effect of Endorsement 29 on Policy 2271.[4] U.S. Fire maintains that Policy 2271 provides only $2 million in limits. Plaintiff argues that Policy 2271 is subject to two sets of $2 million in annual limits, for a total of $4 million in limits. The discrete issue here is whether the two-month period (May 23, 1988, through July 22, 1988) after the conclusion of the first annual period, or "stub" period, is subject to an additional set of $2 million in annual limits as per the Limits of Liability condition.

Beginning with U.S. Fire's motion for summary judgment, U.S. Fire argues Endorsement 29 unambiguously indicates the "stub" period is subject to the first year's $2 million in limits, and not subject to an additional set of annual limits. U.S. Fire highlights the language "effective date of cancellation is amended" in Endorsement 29's first provision and the word "extend" in the second provision. U.S. Fire maintains that the two provisions, when read together, clearly indicate that Endorsement 29 was intended as if (1) there was a prior cancellation, and (2) following the cancellation, the first year of Policy 2271 was extended for two months. Under U.S. Fire's theory, the additional "stub" period is therefore deemed part of the preceding (first annual) period for purposes of determining limits per the Limits of Liability condition.

The Court is not persuaded that Endorsement 29 unambiguously operates as an extension "for an additional period of less than 12 months" under the Limits of Liability condition. To begin, the Court disagrees with U.S. Fire's argument that it is logical to infer the existence of a prior cancellation based on the language of Endorsement 29 standing alone, with no other evidence that a prior cancellation took place. To adopt U.S. Fire's position would require the Court to read the two provisions of Endorsement 29 to mean that Policy 2271 was first changed from a three-year term to a one-year term, and then extended for two months. However, on its face, the first provision of Endorsement 29 shortened Policy 2271 from a three-year to a fourteen-month term.

---

[4] For purposes of the instant motions relating to the interpretation of Endorsement 29 and its legal effect on the policy limits of Policy 2271, the parties have stipulated to the fact that Endorsement 29 was accepted by Plaintiff. (Docs. 228, 229.)

It is also not clear how the second provision's extension of the terms and conditions could operate as an extension "for an additional period of less than 12 months" when the purported cancellation date and extension date are the same. U.S. Fire has not met its burden to show it is entitled to summary judgment on the coverage limits of Policy 2271.

Turning to Plaintiff's motion for summary judgment, Plaintiff argues that Endorsement 29 unambiguously provides an additional set of $2 million in annual limits for the stub period. Plaintiff maintains that pursuant to Endorsement 29, the original policy period was not extended, but shortened to have "an effective date of cancellation" of July 22, 1988. Although the Court agrees that on its face, Endorsement 29 shortened Policy 2271, the Court is not persuaded that Endorsement 29 unambiguously operates as a "remaining period of less than 12 months" under the Limits of Liability condition. Rather, Endorsement 29's language appears to be ambiguous as to how the resulting stub period is to be treated per the Limits of Liability condition. In other words, does Endorsement 29 result in a "remaining period of less than 12 months," which would provide a separate $2 million in coverage, or does it result in "an additional period of less than 12 months," which would provide no additional coverage? The Court must look beyond the language of Endorsement 29 and the Limits of Liability condition and consider the circumstances in the case in attempting to answer this question.

The record before the Court is scant as to the surrounding circumstances concerning Endorsement 29. Although the parties stipulate that Endorsement 29 was accepted by Plaintiff for purposes of the cross motions, the parties dispute which party, the insured or insurer, was represented by Endorsement 29's one signatory. The only additional circumstances relied on by the parties are Policy 2271's monthly premium payments and a couple unattributed handwritten notes on Policy 2271's declarations page. In particular, Policy 2271 indicates that the monthly premium payments for the stub period ($32,300) (Doc. 192-3 at 75) is roughly equivalent to the monthly premium payments for the first year of Policy 2271 ($36,309) (*Id.* at 37). Given that the parties contemplated an additional set of annual limits for "any remaining period of less than twelve months," this fact does not clarify whether Endorsement 29 operates to provide one or two sets of annual limits. In addition, the declarations page of Policy 2271 has two handwritten notes: one note strikes through the original end date of 1990 and writes in "July 22, 1988;" the second note states "$64,600 for extension." (*Id.* at 2.) But the first note only reiterates that Policy 2271 was shortened from a three-year term to a fourteen-month term and there is no evidence to suggest

8

how or when the notes were added. Based on the limited record, this ambiguity is not eliminated when construing Endorsement 29 in the context and circumstances of this case through the eyes of a reasonable insured.

Because the ambiguity is not eliminated by the language and context of Policy 2271, the Court must construe Endorsement 29 against U.S. Fire. A reasonable person in Plaintiff's position as the insured would expect that pursuant to Endorsement 29, the stub period is subject to an additional set of $2 million in limits. Plaintiff is therefore entitled to summary judgment determining that Policy 2271 is subject to two sets of $2 million in annual limits, for a total of $4 million in limits.

### E. The Deductibles in the U.S. Fire Policies

The U.S. Fire Policies contain a $50,000 per occurrence deductible. The parties dispute the application of the $50,000 per occurrence deductible under the U.S. Fire Policies. U.S. Fire maintains that the deductibles include outside attorneys' fees expended by U.S. Fire in the defense of the Asbestos Suits up to the $50,000 per occurrence deductible obligation. Plaintiff argues that attorneys' fees incurred by U.S. Fire in the defense of the Asbestos Suits are not included in the deductible and are the sole responsibility of U.S. Fire. The dispute centers on the meaning of the phrase included in the deductible endorsements, "claim adjusting expense," which is not otherwise defined in the U.S. Fire Policies.[5] The parties agree that the phrase should be understood in its ordinary and popular sense, and not in a technical sense or as a term of art. *See* Cal. Civ. Code § 1644 (how to construe words in a contract); *Nooter Corp. v. Allianz Underwriters Ins. Co.*, 536 S.W.3d 251, 264 (Mo. Ct. App. 2017) (citation omitted) ("Unless a word or phrase is clearly intended to be used as a term of art, we assign a plain and ordinary meaning to the policy's words in a manner consistent with the parties' reasonable expectations and objectives.").

Turning first to U.S. Fire's motion, U.S. Fire argues that "claim adjusting expense" unambiguously includes outside attorneys' fees incurred by U.S. Fire in the defense of the Asbestos Suits. U.S. Fire points to the dictionary definitions of each of the words in the phrase "claim adjusting expense." In sum, U.S. Fire maintains that outside attorneys' fees fall within the ordinary meaning of "claim adjusting expense" because the Asbestos lawsuits constitute a "claim" through which the plaintiffs are demanding monetary payment for their alleged injuries; the role

---

[5] The deductible endorsements in both U.S. Fire Policies state, in relevant part: "THIS DEDUCTIBLE IS TO INCLUDE CLAIM ADJUSTING EXPENSE." (Doc. 187-11 at 1; Doc. 187-12 at 1.)

of outside defense counsel involves "adjusting" or determining the value of and settling the claims; and outside attorneys' fees are "expenses" in that payment for defense counsel fees is for the purpose of trying to secure a favorable settlement, dismissal or success at trial. The Court finds this argument constrained and rejects that the phrase's common and popular meaning unambiguously include defense costs.

U.S. Fire maintains that the purpose of a deductible is to shift some of the insurer's covered risk to the insured by setting a limit on the value of covered losses below which the insurer is not obligated to pay. However, this does not mean that it is universally understood that deductibles include defense costs. *See* 4 New Appleman Insurance Law Practice Guide 38.26 (2019) (describing different approaches to deductibles, including some that do apply to defense costs but some that do not). The case cited by U.S. Fire, *Southern Healthcare Services Inc.* does not support its position because the policy in that case, unlike the U.S. Fire Policies, explicitly stated that defense costs were included in the deductible. *S. Healthcare Servs. v. Lloyd's of London*, 110 So. 3d 735, 749 (Miss. 2013).

U.S. Fire also maintains that if the terms "claim adjusting expense" are ambiguous, Plaintiff's course of dealing in paying outside attorneys' fees under the deductible evidences its understanding that those fees are reimbursable. Course of performance evidence can be used to interpret an ambiguity or to reveal an ambiguity in language otherwise thought to be clear. *Emp'rs Reinsurance Co. v. Superior Court*, 74 Cal. Rptr. 3d 733, 744 (Cal. Ct. App. 2008); Cal. Civ. Proc. Code § 1856 (Deering, Lexis Advance through all 870 Chapters of the 2019 Regular Session) (codifying the use of "course of performance" evidence as extrinsic evidence). Under the California Uniform Commercial Code, "course of performance" is defined as

> a sequence of conduct between the parties to a particular transaction that exists if:
>
> (1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and
>
> (2) the other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

Cal. Com. Code § 1303 (Deering, Lexis Advance through all 870 Chapters of the 2019 Regular Session).

Even if the Court found the phrase "claim adjusting expense" to be ambiguous, the two invoices submitted by U.S. Fire merely show Plaintiff may have paid some outside attorneys' fees under the deductible expense on two occasions.[6] But there is no evidence to suggest the outside attorneys' fees paid were fees incurred by U.S. Fire in litigation as opposed to outside attorneys' fees incurred by U.S. Fire prior to the filing of a lawsuit or otherwise unrelated to defending the Asbestos Suits. Therefore, U.S. Fire has not met its burden to show it is entitled to summary judgment determining that "claim adjusting expense" includes outside attorneys' fees expended by U.S. Fire in the defense of the Asbestos Suits.

Turning to Plaintiff's motion, Plaintiff argues that "claim adjusting expense" unambiguously does not include attorneys' fees incurred by U.S. Fire in the defense of the Asbestos Suits. In support, Plaintiff points to ways in which the terms "claim" and "suit" are given distinct treatment in the U.S. Fire Policies which demonstrate that the term "claim adjusting expense" does not concern lawsuits. Although the Court ultimately agrees with Plaintiff's position, it does not agree that the U.S. Fire Policies clearly distinguish between the terms "claim" and "suit." Rather, the terms "claim" and "suit" appear often to be used interchangeably.

The Court agrees with Plaintiff's position that the phrase "claim adjusting expense," in its ordinary and popular sense, does not include litigation costs. The Court finds additional support for this conclusion in a separate provision of the U.S. Fire Policies. Under the heading "Defenses of Claims or Suits—Coverages A, B and C," there is a provision which states: "[w]here . . . an insured selects the attorney who will conduct the defense of a claim or 'suit' against him, our obligation to pay attorney fees is limited to reimbursing that insured for such attorney fees as were necessarily incurred." (Doc. 187-3 at 8.) This provision would make little sense if U.S. Fire did not bear the responsibility for attorneys' fees it incurs in defense of the Asbestos Suits.

Even if the U.S. Fire Policies were reasonably susceptible to mean that litigation defense costs were included in "claim adjusting expense" such that the phrase "claim adjusting expense" was ambiguous, the phrase would then be construed to give effect to the objectively reasonable expectations of the insured. A reasonable person in Plaintiff's position as the insured could expect that the phrase "claim adjusting expense," standing alone without any modifiers or definition, does

---

[6] It is uncontroverted that U.S. Fire sent Plaintiff an invoice in June 1989 that included $152.79 for outside attorneys' fees which Plaintiff paid in full; that U.S. Fire sent Plaintiff an invoice in November 1988 that included $847.35 for outside attorneys' fees; and that the cited material shows Plaintiff paid $500 less than the full amount sought in the November 1988 invoice.

11

not include outside attorneys' fees incurred by U.S. Fire in defense of the Asbestos Suits. Therefore, Plaintiff is entitled to summary judgment determining that attorneys' fees incurred by U.S. Fire in the defense of the Asbestos Suits are not included in the deductibles of the U.S. Fire Policies.

## IV. Conclusion

After careful consideration,

1. U.S. Fire's motion for summary judgment on certain declaratory judgment issues in Count II is **DENIED**; and
2. Plaintiff's motion for summary judgment on certain declaratory judgment issues in Count II is **GRANTED** in that:
    a. Policy 2271 is subject to two sets of $2 million in annual limits, for a total of $4 million in limits; and
    b. Outside attorneys' fees incurred by U.S. Fire in the defense of the Asbestos Suits are not included in the deductibles of the U.S. Fire Policies.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark<br>
ROSEANN A. KETCHMARK, JUDGE<br>
UNITED STATES DISTRICT COURT

DATED: January 27, 2020