# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| O'REILLY AUTO ENTERPRISES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:17-03007-CV-RK |
| | ) | |
| UNITED STATES FIRE INSURANCE | ) | |
| COMPANY, WESTCHESTER SURPLUS | ) | |
| LINE INSURANCE COMPANY, | ) | |
| CONTINENTAL CASUALTY | ) | |
| COMPANY, COLUMBIA CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is a motion for summary judgment filed by Defendants Continental Casualty Company and Columbia Casualty Company. (Doc. 188.) The motion is fully briefed. (Docs. 189, 206, 213.) Oral argument on the motion was held on January 9, 2020. (Docket Entry 226.) For the reasons below, the motion for summary judgment is **DENIED**.

## I.     Background

Plaintiff O'Reilly Auto Enterprises, LLC ("Plaintiff" or "O'Reilly") brings this insurance dispute lawsuit against four insurance carriers: Defendants United States Fire Insurance Company ("U.S. Fire"), Westchester Surplus Lines Insurance Company ("Westchester"), Continental Casualty Company ("Continental"), and Columbia Casualty Company ("Columbia"). U.S. Fire is a primary general liability carrier, while Westchester, Columbia, and Continental are all excess carriers. Plaintiff's First Amended Complaint asserts two counts: Breach of Contract/Vexatious Refusal against U.S. Fire (Count I) and Declaratory Judgment against all defendants (Count II). The declaratory judgment action stems from a number of underlying asbestos lawsuits filed against Grand Auto, Inc. ("Grand Auto") for which Plaintiff seeks coverage (the "Asbestos Suits").

Plaintiff is the successor-in-interest to Grand Auto. U.S. Fire is a successor-in-interest to Industrial Indemnity Insurance Company ("Industrial Indemnity"), which issued two primary policies of liability insurance to Grand Auto (collectively, the "U.S. Fire Policies"). U.S. Fire Policy Number SG851-5539 provided coverage during the period beginning May 22, 1984, and

ending May 22, 1987, and has a limit of liability of $500,000 for the first year of the policy and $1 million for the second and third years. U.S. Fire Policy Number SG857-2271 provided coverage during the period beginning May 22, 1987, and ending May 22, 1990, and has a limit of liability of $2 million for each annual period, and for any remaining period of less than 12 months.

The U.S. Fire Policies have not been exhausted. U.S. Fire is currently defending Plaintiff with regard to the Asbestos Suits. Columbia issued an excess policy, Policy Number 186 31 61 ("the Columbia Policy"), to Grand Auto for the policy period beginning July 24, 1976, and ending May 22, 1977. The Columbia Policy contains a $5 million per occurrence limit excess of an underlying liability insurance issued by Home Insurance Company ("Home"), which had a limit of liability of $500,000 per occurrence and in the aggregate. Continental issued an excess policy, Policy 401-77-15 ("the Continental Policy"), to Grand Auto for the policy period beginning May 22, 1978, and ending May 22, 1979. The Continental Policy contains a $5 million per occurrence limit and is excess to an underlying liability insurance policy issued by Home, which had a limit of liability of $500,000 per occurrence and in the aggregate. For purposes of the instant motion only, Continental and Columbia do not dispute that the terms of the Continental and Columbia Policies are as provided in Plaintiff's Exhibits C and D to its First Amended Complaint. (Doc. 189 at 6, n. 1.)

Home became insolvent before the underlying policy limits were exhausted. In Count II, among other things, Plaintiff seeks a declaratory judgment determining the effect of the insolvency of Home on the coverage under the Continental and Columbia Policies. Plaintiff also seeks a declaration determining the obligations of Continental and Columbia for defense costs and indemnity obligations related to the Asbestos Suits and whether that obligation is subject to the exhaustion of the U.S. Fire Policies. Continental and Columbia move for summary judgment in their favor determining that: (1) Continental and Columbia are not obligated to "drop down" due to Home's insolvency, and (2) Continental and Columbia owe no duty to defend or indemnify Plaintiff because the U.S. Fire Policies have not been exhausted.

## II. Legal Standard

A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The rule requires summary judgment to be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. Discussion

### A. Rules for Construction of Insurance Contracts

"An insurance policy is a contract between the insured and insurer and its construction is governed by the rules which usually control other contracts." *Mauck v. Nw. Nat'l Ins. Co.*, 283 P. 338, 340 (Cal. Dist. Ct. App. 1929).[1] "[W]hen language in an insurance policy is clear and explicit, that language controls construction and enforcement of the contract." *Travelers Cas. & Sur. Case Co. v. Am. Int'l Surplus Lines Ins. Co.*, 465 F. Supp. 2d 1005, 1013 (S.D. Cal. 2006) (discussing California law). Under California law,

> [b]efore finding policy language is ambiguous, coverage clauses must be construed in the context of the policy as a whole and the circumstances of the case, rather than in the abstract. The question whether a particular phrase is ambiguous in the context and circumstances must be answered through the eyes of a reasonable person in the position of the insured.

*Id.* at 1013 (citation omitted). "If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 884 P.2d 1048, 1053 (Cal. 1994).

### B. Whether Continental and Columbia are obligated to "drop down" due to Home's insolvency

"There are two levels of insurance coverage -- primary and excess. Primary insurance is coverage under which liability attaches to the loss immediately upon the happening of the occurrence." *N. River Ins. Co. v. Am. Home Assurance Co.*, 257 Cal. Rptr. 129, 131 (Cal. Ct. App. 1989) (cleaned up). "Liability under an excess policy attaches only after all primary coverage has

---

[1] The parties agree that California law applies to the substantive issues raised in this motion.

been exhausted." *Id.* If a primary insurer becomes insolvent, an excess insurer may be obligated to drop down and provide coverage, i.e., to bear the risk of a primary insurer's insolvency. *See Res. Ins. Co. v. Pisciotta*, 640 P.2d 764, 772 (Cal. 1982). Whether an excess insurer must drop down in the event of a primary insurer's insolvency is determined by the language of the insurance contract. *Id.*

*Pisciotta* is the watershed case in California on the drop down question due to a primary insurer's insolvency. *Wells Fargo Bank v. Cal. Ins. Guarantee Ass'n*, 45 Cal. Rptr. 2d 537, 541 (Cal. Ct. App. 1995). The excess insurance in *Pisciotta* provided coverage for any excess over the "amount recoverable" under the underlying insurance. *Pisciotta*, at 640 P.2d at 772. The *Pisciotta* court found the phrase "amount recoverable" was ambiguous because it could mean that the excess insurance was liable for (1) amounts over the limit of the underlying insurance, or (2) amounts which the insured is unable to recover from the underlying insurance (including for the underlying insurer's insolvency). *Id.* The *Pisciotta* court followed the rationale in an earlier case, *Fageol*, where the excess insurance provided coverage once the primary insurance had been "exhausted." *Id.* In *Fageol*, the term "exhausted" was not qualified or defined in the policy and therefore could mean when a primary insurer becomes insolvent. *Fageol Truck & Coach Co. v. Pac. Indem. Co.*, 117 P.2d 669, 671 (Cal. 1941). Because of the ambiguity of the phrase "amounts recoverable" in *Pisciotta* and lack of qualification or definition of the term "exhausted" in *Fageol*, the excess insurers in those cases had to drop down due to a primary insurer's insolvency. 640 P.2d at 772; 117 P.2d at 671. Later California decisions continue to rely on the rationale in *Pisciotta* and *Fageol*. *See e.g.*, *Fed. Ins. Co. v. Scarsella Bros., Inc.*, 931 F.2d 599 (9th Cir. 1991) (applying Washington law but relying on *Pisciotta* and *Fageol*), overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *Wells Fargo Bank v. Cal. Ins. Guarantee Ass'n*, 45 Cal. Rptr. 2d 537 (Cal. Ct. App. 1995); *Span, Inc. v. Associated Internat. Ins. Co.*, 277 Cal. Rptr. 828 (Cal. Ct. App. 1991); *Denny'S, Inc. v. Chi. Ins. Co.*, 286 Cal. Rptr. 507 (Cal. Ct. App. 1991).

Different language in the insurance contracts at issue, however, can lead to different results. Excess insurers bear the risk of a primary insurer's insolvency where the excess policy provisions are ambiguous regarding the event of a primary insurer's insolvency. *Scarsella Bros., Inc.*, 931 F.2d at 604 (excess insurance provision was ambiguous where liability is triggered after underlying insurance is exhausted, without defining or modifying "exhausted"). By contrast, excess policy

4

provisions have been held to preclude drop down in the event of a primary insurer's insolvency where the policy unambiguously states the excess insurer's liability is triggered when the primary insurance is exhausted by payment of the underlying policy limit. *Wells Fargo Bank*, 45 Cal. Rptr. 2d at 542; *Span, Inc.*, 277 Cal. Rptr. At 835; *Denny'S, Inc.*, 286 Cal. Rptr. at 511.

Here, the Continental and Columbia Policies provide as follows:

> 1. Coverage A – Excess Liability Indemnity
> The company will indemnify the insured for loss in excess of the total applicable limits of liability of underlying insurance stated in the schedule."
>
> . . .
>
> 4. LIMITS OF LIABILITY
> . . .
> With respect to Coverage A, if the applicable limit of liability of the underlying insurance is less than as stated in the schedule of underlying insurance because the aggregate limit of liability of the underlying insurance has been reduced this policy becomes excess of such reduced limit of liability.

(Doc. 39-4 at 18-19; Doc. 39-5 at 10-11).

The coverage clause does not appear to explicitly address the "drop down" question at issue but simply indicates that Continental and Columbia will indemnify loss in excess of the underlying insurance (the Home Policy) limits. The limits clause appears to address the "drop down" issue directly by indicating that if the limits of the Home Policy have been reduced, the Continental and Columbia Policies are excess to that reduced limit. However, "reduced" is not defined or modified. The language therefore does not preclude the excess insurer's liability being triggered if the Home Policy limit is reduced to zero in the event of Home's insolvency. *See Scarsella Bros., Inc.*, 931 F.2d at 604. Rather, the term "reduced" appears to be ambiguous, like the unmodified term "exhausted" in *Fageol*, because the cause for reduction in the limits of the Home Policy may or may not include Home's insolvency. The Court must therefore consider the context of the Continental and Columbia Policies as a whole and the circumstances of the case through the eyes of a reasonable person in Plaintiff's position.

Continental and Columbia maintain that the definition of "loss" as used in the coverage clause precludes drop down in the event of Home's insolvency. "Loss" is defined as follows:

> "loss" means with respect to Coverage A the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally obligated,

5

after making deductions for all recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy.

(Doc. 39-4 at 20; Doc. 39-5 at 12). Continental and Columbia argue that because the term "loss" is defined to mean "sums paid," payment of a loss up to the limits of the underlying coverage in the Home Policy is required to trigger excess coverage. However, as stated above, the coverage clause does not appear to directly address the drop down question at issue whereas the limits clause explicitly contemplates drop down in the event of a reduction of the Home Policy limits for any reason. The Court cannot consider the coverage clause in isolation. At best, the coverage and limits clauses, when read together, create an ambiguity as to whether Continental and Columbia's liability is triggered if the Home Policy limits are reduced to zero due to Home's insolvency. As a result, the Court would then construe the ambiguity against Continental and Columbia to protect Plaintiff's reasonable expectation of coverage.

Continental and Columbia further argue that the maintenance clause further supports their position that drop down is not required in the event of Home's insolvency. The maintenance clause provides as follows:

> 2. Maintenance of Underlying Insurance – Coverage A
> The insured agrees that the policies listed in the schedule of underlying insurance and renewals and replacements thereof not more restrictive shall be maintained without alteration of terms or conditions in full effect during the currency of this policy **except for any reduction** of the aggregate limits of liability in the underlying insurance because of injury or destruction.
> . . .
> Failure of the insured to comply with this condition shall not invalidate this policy, but, in the event of such failure, the company shall only be liable under Coverage A and only to the same extent as if the insured had complied with this condition.

(Doc. 39-4 at 21; Doc. 39-5 at 13) (emphasis added). The maintenance clause indicates the insured agrees to maintain the Home Policy limits, reduced only by payments because of injury or destruction. However, the *Scarsella Bros.* court rejected this argument regarding a similarly worded maintenance clause because the maintenance clause addressed only the insured's duty, not the coverage supplied by the excess insurer. 931 F.2d at 604 ("On its face, the Maintenance Clause defines a duty of the insured, not the insurer[;] [t]his provision therefore says little about terms appearing in the Insuring Clause, which sets forth duties of the insurer.") In addition, the

6

maintenance clause says nothing about ensuring that the Home Policy remains collectible. *See Pisciotta*, 640 P.2d at 772 n. 8 (distinguishing instances in which the maintenance provision requires the insured to maintain collectible primary insurance).

Continental and Columbia liken the policy language here to the policy language in *Span*, where it was found that the excess insurer had no duty to drop down upon the insolvency of the primary insurer. In *Span*, the excess insurance policy modified "the event of reduction or exhaustion" of the underlying insurance with a specific cause: "*by reason of losses paid thereunder . . .*" 277 Cal. Rptr. at 834. Unlike here where the term "reduced" is unmodified, the language in *Span* unambiguously contemplated exhaustion of the underlying policy limit only by payment because it modified the phrase "reduction or exhaustion" with "by reason of losses paid." For the reasons stated above, the outcome does not change because the term "loss" as used in the coverage clause means "sums paid."

Because the ambiguity is not eliminated by the language and context of the Continental and Columbia Policies, the Court must apply the meaning and construction of the term "reduced" that is most favorable to Plaintiff. Continental and Columbia must bear the risk of Home's insolvency since the Continental and Columbia Policies do not clearly and explicitly preclude this result. Consequently, Continental and Columbia have not met their burden to show they are entitled to summary judgment on the question of whether they are required to drop down because of the insolvency of Home.

### C. Whether Continental and Columbia's duty to defend or indemnify is subject to the exhaustion of the U.S. Fire Policies

"A secondary policy, by its own terms, does not apply to cover a loss until the underlying primary insurance has been exhausted. This principle holds true even where there is more underlying primary insurance than contemplated by the terms of the secondary policy." *N. River Ins. Co.*, 257 Cal. Rptr. at 132. The phrase "horizontal exhaustion" refers to the general rule that *all* primary insurance must be exhausted before a secondary insurer's liability is triggered. *Cmty. Redevelopment Agency v. Aetna Cas. & Sur. Co.*, 57 Cal. Rptr. 2d 755, 761 (Cal. Ct. App. 1996). By contrast, the presumption of horizontal exhaustion is overcome where an excess policy clearly states that it is excess to a specifically described policy and that coverage attaches only when the limits of the specific policy are exhausted. *Id.* at 761 and n. 6. The later situation is referred to as "vertical exhaustion." *Id.* at 761.

The question of whether to apply "horizontal exhaustion" or "vertical exhaustion" is particularly problematic in "continuous loss" cases such as this case. In continuous loss cases, "a continuing or progressively deteriorating condition which causes . . . injury throughout more than one policy period will potentially be covered by *all* policies in effect during those periods." *Id.* (emphasis in original) (citing *Montrose Chem. Corp. v. Admiral Ins. Co.*, 913 P.2d 878 (Cal. 1995)). The *Community* decision further explains:

> [P]rimary policies may have defense and coverage obligations which make them underlying insurance to excess policies which were effective in entirely different time periods and which may not have expressly described such primary policies as underlying insurance. Absent a provision in the excess policy *specifically describing* and *limiting* the underlying insurance, a horizontal exhaustion rule should be applied in continuous loss cases because it is most consistent with the principles enunciated in *Montrose* [by the California Supreme Court]. In other words, all of the primary policies in force during the period of continuous loss will be deemed primary policies to each of the excess policies covering that same period. Under the principle of horizontal exhaustion, *all* of the primary policies must exhaust before *any* excess will have coverage exposure.

*Id.* (emphasis in original).

In accordance with *Community*, the Court considers whether there is specific and limiting language in the Continental and Columbia Policies to overcome the presumption of applying the horizontal exhaustion rule. As stated above, the coverage clause provides that Continental and Columbia will indemnify loss in excess of the underlying insurance's limits as stated in the schedule (the Home Policy). "Loss" is then defined as sums paid after deductions for "all recoveries, salvages and other insurances (whether recoverable or not)[.]" By incorporating "other insurance" in the definition of loss, the coverage clause itself indicates the Continental and Columbia Policies are triggered after not only the exhaustion of the Home Policy, but also the exhaustion of other insurance as well.

In addition, the limits clause and the "other insurance" clause also support the conclusion that Continental and Columbia's liability is triggered only after exhaustion of all primary policies. The relevant policy language is as follows:

> 4. LIMITS OF LIABILITY
> . . .
> Each Occurrence – The limit of liability stated in Item 3 of the declarations as applicable to 'each occurrence' is the limit of the company's liability for all **ultimate net loss** and **loss** to which this policy applies as a result of any one occurrence.

8

. . .

DEFINITIONS

Unless otherwise noted, the definitions apply to Coverage B.

"loss" means with respect to Coverage A the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally obligated, after making deductions for **all** recoveries, salvages and **other insurances** (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy.

. . .

"ultimate net loss" means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable after making deductions (or **all** other recoveries, salvages and **other insurances** (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy . . .[.]

. . .

CONDITIONS

Unless noted otherwise, the conditions apply to all coverages.
. . .
10. Other Insurance: If, with respect to loss and ultimate net loss covered hereunder, the insured has **other insurance**, whether on a primary, excess or contingent basis, there shall be no insurance afforded hereunder . . . provided, that if the limit of liability of this policy is greater than the limit of liability provided by the other insurances, this policy shall afford excess insurance over and above such other insurance . . . [.]
This condition does not apply with respect to the underlying insurance . . . [.]

(Doc. 39-4 at 18-21; Doc. 39-5 at 10-13) (emphasis added).

The limits clause provides that Continental and Columbia's liability for each occurrence is the limit of their liability for all "ultimate net loss" and "loss," and both loss terms are defined as sums paid after deductions for "all . . . other insurances." Therefore, both the coverage and limits clauses indicate that Continental and Columbia's coverage exposure attaches only after all primary insurance is exhausted. The other insurance clause again indicates that the excess carrier's liability will apply in excess of other insurance not specifically described in the Continental and Columbia Policies. Therefore, the language in the Continental and Columbia Policies does not overcome the presumption that horizontal exhaustion should apply.

9

In response, Plaintiff points out that the coverage clause specifically describes the Home Policy. While this is true, Plaintiff's position ignores the definition of loss that incorporates deductions for other insurance as well as the multiple other clauses that expressly attaches Continental and Columbia's coverage exposure to other insurance not specifically described.

Plaintiff also maintains that the adoption of Continental and Columbia's position is not supported by California law, but it fails to cite any persuasive authority in support. For example, Plaintiff relies on *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 52 P.3d 79, 93 (Cal. 2002), but this case involves the obligation of successive primary insurers, and did not involve excess insurers. At oral argument, Plaintiff provided new authority, *Advent Inc. v. Nat'l Unioin Fire Ins. Co.*, 211 Cal. Rptr. 3d 685 (Cal. Ct. App. 2016). However, *Advent* involved a single date of loss case as opposed to the continuous loss situation involved in this case.

Finally, Plaintiff points out that Continental and Columbia do not address the umbrella coverage, but Plaintiff fails to provide any authority to support that the presence of the umbrella coverage changes the outcome on the instant motion. *Cf. Wells Fargo Bank*, 45 Cal. Rptr. 2d at 543 (the presence of both umbrella and excess coverage in the policy does not change the outcome on the question of drop down in the event of a primary insurer's insolvency).

Based on the language in the Continental and Columbia Policies, it appears that horizontal exhaustion should apply in this case. However, under *Community*, the principles of horizontal exhaustion apply only where the period of continuous loss is the same for the primary and excess policies at issue. 57 Cal. Rptr. 2d at 761. Here, Continental and Columbia have neither argued nor presented evidence to show an absence of genuine dispute as to the scope of the period of continuous loss at issue and whether it spans the different coverage periods in the U.S. Fire, Continental, and Columbia Policies. Consequently, Continental and Columbia have not met their burden to show they are entitled to summary judgment on the question of whether Continental and Columbia's duty to defend or indemnify is subject to the exhaustion of the U.S. Fire Policies.

## IV. Conclusion

After careful consideration, the motion for summary judgment filed by Defendants Continental Casualty Company and Columbia Casualty Company is **DENIED**. (Doc. 188.)

**IT IS SO ORDERED.**

DATED: January 31, 2020

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT